# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JESSE J. LOGAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 06-CV-0588-MJR |
| | ) |
| ROBERT J. HERTZ, and | ) |
| B. UNFRIED, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

### A. Introduction

On July 27, 2006, Jesse J. Logan filed the above-captioned civil rights action challenging the conditions of his detention at the Madison County Jail (Doc. 1). Before the Court is a motion for summary judgment filed by Defendants Unfried and Hertz (Doc. 53). Unfried seeks judgment in her favor on Count 1, arguing that the evidence could not support a finding that she responded with deliberate indifference to Logan's serious medical needs. Hertz seeks judgment in his favor on Count 2, arguing that the evidence does not show that he was personally involved in a constitutional deprivation. Logan filed a response on June 9, 2009 (Doc. 58) and the Defendants submitted their reply on June 18, 2009 (Doc. 61).

Having fully considered the parties' filings, the Court hereby **GRANTS** the Defendants' motion for summary judgment.

### B. Legal Standard for Summary Judgment

Summary judgment is appropriate when there are no genuine issues of material fact,

-1-

and the moving party is entitled to judgment as a matter of law. ***Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)**. **FEDERAL RULE OF CIVIL PROCEDURE 56(a)** provides:

> [Summary judgment] should be rendered if the pleadings, the discovery and disclosure materials on file and any affidavits show that there is no genuine issue as to any material fact that the movant is entitled to as a matter of law.

Because the primary purpose of summary judgment is to isolate and dispose of factually unsupported claims, the non-movant may not rest on the pleadings but must respond, with affidavits or otherwise, setting forth specific facts showing that there is a genuine issue for trial. ***Oest v. IDOC*, 240 F.3d 605, 610 (7th Cir. 2001);** ***Moore v. J.B. Hunt Transport, Inc.*, 221 F.3d 944, 950 (7th Cir. 2000).** The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." ***Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).**

The burden is on the non-moving party to produce specific facts that show a genuine issue for trial. **FED.R.CIV.P. 56(e);** ***Moore*, 221 F.3d at 950.** "Conclusory allegations and self-serving affidavits, if not supported by the record, will not preclude summary judgment." ***Haywood v. North American Van Lines, Inc.*, 121 F.3d 1066, 1071 (7th Cir. 1997);** *see also* **FED.R.CIV.P. 56(e) ("an opposing party may not rely merely on allegations or denials in its own pleading")**.

In determining whether a genuine issue of material fact exists, the Court views the record in the light most favorable to—and draws all reasonable inferences in favor of—the non-moving party. ***Anderson*, 477 U.S. at 255.**

### C. Analysis

### 1. Deliberate Indifference to a Serious Medical Need (Count 1)

In ***Estelle v. Gamble*, 429 U.S. 97 (1976)**, the Supreme Court held that the Eighth

Amendment's prohibition against cruel and unusual punishment imposes a duty upon the States to provide adequate medical care to inmates. Failure to provide medical care violates the Eighth Amendment when there is "deliberate indifference" to a substantial risk of harm. ***Sherrod v. Lingle*, 223 F.3d 605, 610 (7th Cir. 2000);** ***Farmer v. Brennan*, 511 U.S. 825, 834 (1994).** In order to satisfy the deliberate indifference standard, a plaintiff must establish that: (1) his medical condition was objectively serious and (2) the defendant was subjectively aware of the medical need and disregarded an excessive risk to the inmate's health. ***Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001).**

The parties recognize that Logan was not a convicted inmate at the time his claims arose. He was a still a pre-trial detainee when he was confined in the Madison County Jail. As such, his claim arises under the Fourteenth Amendment's Due Process Clause. But this distinction is a minor one, as there is little practical difference between medical care claims brought pursuant to the Fourteenth and Eighth Amendments. ***Weiss v. Cooley*, 230 F.3d 1027 (7th Cir. 2000).**

For purposes of this motion, Unfried concedes that Logan had kidney failure and high blood pressure, and that he had a serious need for medical treatment of those ailments. As a result, she focuses attention on the second element: whether her response to the known risk of harm qualifies as deliberate indifference. She points to evidence that she responded appropriately by arranging for Logan to receive care from medical professionals on numerous occasions, as well as ensuring that he received prescribed medications. Logan argues that Unfried's response to his symptoms was inadequate in some respects.

Logan was diagnosed with kidney failure (end-stage renal disease) prior to his detention at the Madison County Jail (Doc. 53-2, Exh. A, pp. 11-12). The treatment prescribed by

Dr. Dalal included both medication and hemodialysis. Defendant Unfried was a nurse at the jail. She assessed Logan's condition and made arrangements for medical treatment (Doc. 53-2, Exh. A, pp. 17-22). The treatment provided during Logan's detention at the Madison County Jail generally falls into two categories: routine care and care for symptoms and complications.

Routine Care. Routine care started the day Logan arrived at the jail (Doc. 53-2, Exh. A, pp. 13-14). Dialysis treatment was offered but refused on April 16, 2004 (Doc. 53-2, Exh. A, pp. 16-17). Between April 21 and October 1, 2004, Logan accepted and received dialysis treatments at the Granite City Dialysis Center three days each week (Doc. 53-2, Exh. A, pp. 28-34). Each treatment lasted approximately four hours and fifteen minutes (Doc. 53-2, Exh. A, p. 29). During his dialysis sessions, Logan had access to members of the dialysis center's medical staff (Doc. 53-2, Exh. A, pp. 29-30). Throughout his detention, he also received vitamins and prescribed medications, including Clonidine, Darvon, Keflex, Lisinopril, Norvasc, Paxil, and Renagel (Doc. 53-4, Exh. C).

Care for Symptoms and Complications. On at least ten occasions, Logan received additional medical attention at area hospitals for the symptoms he experienced (Doc. 53-2, Exh. A, pp. 25-26). On each occasion, treatment was provided after Logan made complaints to members of the jail's medical staff. On April 17, 2004, he was transported to Anderson Hospital, where he received treatment for hypertension and vomiting (Doc. 53-7, Exh. F). On June 15, 2004, he received treatment at Gateway Regional Medical Center, including blood transfusion for severe blood loss anemia and a consultation with a physician regarding gastrointestinal concerns (Doc. 53-8, Exh. G). On June 16, 2004, he underwent a panendoscopy with biopsy and a colonoscopy at Gateway Regional Medical Center (Doc. 53-9, Exhs. H & I). On other dates[1], Logan received

---

[1] These dates are not specifically identified in the materials on file.

emergency medical treatment for symptoms of vomiting and hypertension (Doc. 53-2, Exh. A, p. 26).

This evidence could not support a finding that Unfried ignored or disregarded the risks of harm known to result from Logan's kidney failure and hypertension. Logan contends that Unfried is liable for multiple incidents when complications were not promptly treated. He believes medical care was delayed until he was "real sick" and suspects that the delay in providing treatment caused his symptoms to escalate. In support of this theory, he points to a time when he told Unfried that he was vomiting blood and she did not arrange for immediate care. Rather, she instructed Logan to vomit in a foot pan. Logan believes this incident caused or contributed to severe anemia, which was diagnosed on June 15, 2004, and treated with blood transfusion.

Evidence of delay in providing medical treatment can support a deliberate indifference claim. ***Gutierrez v. Peters*, 111 F.3d 1364, 1372 (7th Cir. 1997).** When considering whether Unfried violated the constitutional standard, the Court evaluates Logan's medical care as a whole. ***Id.* at 1364.** Deliberate indifference may be inferred if Unfried's decisions strayed far afield of the accepted range of nursing practice. ***Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261-62 (7th Cir. 1996).** In other words, deliberate indifference may be proved with evidence that Unfried's actions were "woefully inadequate" to address the risk of harm. ***Hudson v. McHugh*, 148 F.3d 859, 863 (7th Cir. 1998).**

Logan states that he observed blood in his vomit one day in June. He conveyed this information to Unfried, who did not immediately arrange transportation to a hospital. Logan alleges that Unfried instead issued a foot pan and instructed Logan to vomit in the pan if this symptom recurred. The record is clear that Logan was transported to a hospital on June 15, 2004 (Doc. 53-2,

Exh. A, pp. 35-38). The length of the delay between Logan's initial conversation with Unfried and his trip to the hospital cannot be discerned from the materials on file. Because Unfried arranged for Logan to be transported for medical attention multiple times in June, evidence of some undefined delay does not suggest that Unfried's efforts in this regard were woefully inadequate.[2] Also, no evidence suggests that this particular delay fell far beyond the accepted range of nursing practice for possible complications of kidney failure or high blood pressure.

Logan also relies on assertions that other delays occurred and prolonged his symptoms of great pain. Unfortunately, this position cannot be explored without specific factual information. At this stage of the proceeding, mere allegations do not suffice to demonstrate an issue for trial. *Celotex*, **477 U.S. at 323-24.**

In sum, no genuine issue of material fact exists that could support Logan's claim against Unfried. The evidence shows that Unfried knew that Logan suffered from kidney failure and high blood pressure and took reasonable steps to arrange appropriate treatment, including dialysis, vitamins, prescribed medicine, and other treatment of symptoms and complications. Because her response does not reflect deliberate indifference to the risk of harm, Unfried is entitled to summary judgment in her favor.

**2. Personal Involvement of Defendant Hertz (Count 2)**

Logan's claim against Sheriff Hertz pertains to the low temperatures he experienced when he was transported to and from the Granite City Dialysis Center. He maintains that Hertz ignored repeated requests for protection against the cold in the form of blankets, shoes, and

---

[2] Medical treatment was provided at Granite City Dialysis Center and Gateway Regional Medical Center on June 2, 4, 7, 9, 11, 14, 15, 16, 18, 21, 23, 25, 28, and 30, 2004. (Doc. 53-2, Exh. A, p. 8; Doc. 53-8, Exh. G; Doc. 53-9, Exh. H).

underwear.

Hertz argues that the evidence does not establish that he was personally involved in any constitutional deprivation. At his deposition, Logan testified that he tried to speak with Hertz, without success (Doc. 53-2, Exh. A, p. 52). He registered his complaints with other jail officers and officials and may have sent correspondence to Hertz once or twice (Doc. 53-2, Exh. A, pp. 53-55). Logan does not know whether Hertz was aware of his situation (Doc. 53-2, Exh. A, pp. 56-57).

A prison official is liable for inmate exposure to cruel and unusual conditions of confinement only when he or she has the requisite knowledge and intent. The official must know about the inhumane conditions and disregard an excessive risk to inmate health or safety. *Farmer*, **511 U.S. at 837.** In some situations, evidence that a prisoner sent many letters that went unanswered can establish that the official knew about and ignored unconstitutional conduct. *Gentry v. Duckworth*, **65 F.3d 555, 561 (7th Cir. 1995) (inferring superintendent's knowledge and consent to deprivation of writing materials).** The inference is warranted only when the correspondence provides notice of a constitutional violation. The letters must contain details sufficient to advise the official of a situation requiring intervention. *Vance v. Peters*, **No 94-3070 (7th Cir. 1996) (no showing that inmate's communications informed supervisor of an excessive risk to health or safety in delay of medical care case).** That is, there needs to be evidence supporting a finding that, because of the communication, the official knew of a constitutional deprivation and approved it, turned a blind eye to it, failed to remedy it, or in some way personally participated. *Id.*

Logan can show that he sent one or two letters to Hertz asking for underwear, a coat, or a blanket to protect against cold temperatures. This evidence does not provide the details needed to prove that Hertz condoned, ignored, or approved a deprivation of constitutional proportion.

Accordingly, the Court finds that no genuine issue of material fact exists with respect to the issue of whether Hertz was personally involved in any deprivation of Logan's constitutional rights. As a result, Hertz is entitled to summary judgment.

### D.  Conclusion

For all of the reasons explained herein, the Court **GRANTS** Defendants' motion for summary judgment (Doc. 53). The Clerk of the Court is **DIRECTED** to enter judgment against Plaintiff Logan and in favor of Defendant Unfried as to Count 1. Additionally, the Clerk of the Court is **DIRECTED** to enter judgment against Plaintiff Logan and in favor of Defendant Hertz as to Count 2.

As there are no other claims pending in this action, this case is now closed.

**IT IS SO ORDERED.**

**DATED this 7th day of August 2009.**

> **s/ Michael J. Reagan**
> **MICHAEL J. REAGAN**
> **United States District Judge**